**In the Interest of X.B., A Child, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2001–CA–001617–DG.**

Court of Appeals of Kentucky.

Feb. 7, 2003.

As Modified and Ordered to be Published April 25, 2003.

Suzanne Hopf, Frankfort, KY, for appellant.

Timothy K. Chism, Jr., Assistant Warren County Attorney, Bowling Green, KY, for appellee.

Before BUCKINGHAM, McANULTY, and SCHRODER, Judges.

*OPINION*

BUCKINGHAM, JUDGE.

This case involves an order of the Juvenile Division of the Warren District Court committing a child, X.B.[1], to the Department of Juvenile Justice (DJJ) for placement. We granted discretionary review after the Warren Circuit Court entered an order affirming the decision of the Warren District Court. We vacate and remand.

X.B. was charged in the Juvenile Division of the Warren District Court with the criminal offenses of second-degree burglary, first-degree criminal mischief, third-degree criminal mischief, and theft by unlawful taking of property valued less than $300. On September 27, 1999, X.B., who was thirteen years old at the time, signed a district court form advising him of his various rights. The form contained a provision that "[i]f you stipulate (admit) to the charges, the Court will consider recommendations made by the County Attorney working with the Cabinet for Human Resources and your attorney." When X.B. signed this statement of rights, he was present in court with only his grandfather, who was X.B.'s legal custodian. He was not represented by an attorney at that time.

On November 2, 1999, X.B. returned to the juvenile court and stipulated to the charge of second-degree burglary. The remaining charges were merged into that charge. Following X.B.'s stipulation, the court set the case for a dispositional hearing to be held on November 18, 1999. The court noted that a representative from DJJ would make recommendations at that time.

On November 18, 1999, the DJJ case worker recommended to the court that X.B. be probated to DJJ and that X.B. be allowed to continue living with his grandfather. In addition, the case worker recommended that X.B. be evaluated for day treatment. However, the court decided that probation was not appropriate and that X.B. was "right for placement" with DJJ. Thus, the court rejected the recommendation of DJJ and ordered placement rather than probation. X.B. was allowed to continue living with his grandfather until placement.

X.B. appealed the district court's decision to the Warren Circuit Court. That court affirmed the disposition of X.B.'s case. X.B. then petitioned this court for discretionary review. The petition was granted, and we review the matter herein.

■ X.B. argues that the district court abused its discretion when it placed him with the DJJ rather than giving him probation. Specifically, X.B. argues that the court was required to impose the least restrictive alternative when there was no showing that any less restrictive alternatives had been attempted or were not feasible. In support of the argument, X.B. cites KRS[2] 600.010(2)(c).

The statute states that "[t]he court shall show that other less restrictive alternatives have been attempted or are not feasible in order to insure that children are not removed from families except when absolutely necessary." KRS 600.010(2)(c). This statute is set forth in a provision entitled "Title and Intent of KRS Chapters 600–645" and is stated to be one of the "express legislative purposes" of the Kentucky Unified Juvenile Code. KRS

---

1. Because the child is a juvenile, we will refer to him by his initials rather than his name.

2. Kentucky Revised Statutes.

600.010(2). X.B. argues that the court abused its discretion in committing him to the DJJ "absent evidence and specific findings that probation would not be a proper disposition."

We have read a transcript of the dispositional hearing and note that the district court gave no reason for committing X.B. to DJJ other than to state that he was "right for placement." Specifically, the court did not state that other less restrictive alternatives, such as probation, had been attempted or were not feasible. Furthermore, there was no indication in the record that X B. had ever been adjudicated delinquent of any offense or that he had been subjected to any form of treatment or probation by the juvenile justice system prior to the court committing him to DJJ in this case.

X.B. was only thirteen years old when he appeared before the court, and he apparently had never been subjected to any sort of punishment or treatment by the juvenile justice system. We conclude that, before X.B. could be taken from his family and placed with DJJ, the court should have at least stated its reasons for doing so. The statute requires as much.[3] Thus, we vacate the disposition order and remand the case to the Warren District Court for the entry of additional findings to support the disposition or for a new disposition in accordance with lesser restrictive alternatives.

■ X.B.'s second argument is that his "uncounselled admission to the underlying charge was not knowingly and voluntarily made when his admission was made in reliance on the juvenile court's indication that it would consider the recommendations of the Cabinet for Human Resources and when the court ultimately would not honor the worker's recommendations." In other words, X.B. argues that he stipulated to the offense with the understanding and reliance that the court would follow the recommendations of the DJJ case worker. The facts of the case do not support this argument.

It is true that X.B. did not have an attorney when he signed the statement of rights form at his initial juvenile court appearance. As we have noted, that form contained a provision which stated that if X.B. stipulated to the charges, the court would consider recommendations made by the county attorney and the DJJ case worker. However, X.B. was represented by an attorney when he stipulated to the offense on November 2, 1999. The fact that he was not represented by an attorney when he signed the statement of rights form does not make his stipulation "uncounselled."

X.B. further argues in this regard that he stipulated to the offense in reliance that the court would consider the case worker's recommendations and that he would be entitled to withdraw the stipulation if the court determined that it would not follow those recommendations. In support of that argument, X.B. cites RCr[4] 8.10 and *Kennedy v. Commonwealth*, Ky., 962 S.W.2d 880 (1997), and he states that "[w]hen a plea agreement is not honored, the defendant has an unequivocal right to withdraw his plea."

There are two problems with X.B.'s argument in this regard. First, the signed statement of rights form stated only that

---

3. Had the record clearly indicated that X.B. had been before the court on previous occasions and that the court had attempted lesser restrictive alternatives, then the result herein may have been different. In this case, however-

er, there is no indication that lesser restrictive alternatives had been attempted or were not feasible.

4. Kentucky Rules of Criminal Procedure.

the court would "consider" recommendations made by the county attorney and DJJ. The form did not state or otherwise represent that those recommendations would be binding on the court. Second, X.B. could not have relied on the case worker's recommendation of probation when he stipulated to the offense because said recommendation had not been made at that time. It was only later, at the November 18, 1999 dispositional hearing, that the DJJ case worker recommended probation. In short, X.B.'s argument that he relied on the recommendation and that "the state broke their implied promise to X.B." is without merit.[5]

The order of the Warren District Court is vacated and remanded.

ALL CONCUR.

---

5. If X.B. is implying that the Commonwealth breached a plea agreement with him, then that argument is also without merit because the county attorney never opposed the recommendation of the DJJ case worker.